Reginald E. NUTTER et ux., Appellants,

v.

Gerald Don DEARING, Appellee.

No. 16641.

Court of Civil Appeals of Texas.

Dallas.

Jan. 21, 1966.

Rehearing Denied Feb. 18, 1966.

Rosenfield, Berwald & Mittenthal, Dallas, for appellants.

Touchstone, Bernays & Johnston, and Jim E. Cowles, Dallas, for appellee.

DIXON, Chief Justice.

This is a wrongful death action brought by appellants Reginald E. Nutter and wife Gladys M. Nutter against appellee Gerald Don Dearing arising out of a collision involving a Ford automobile being operated by appellants' son, Richard Frederick Nutter, and a Chevrolet automobile being operated by appellee Dearing.

The collision took place in the 9500 block on Forest Lane in the City of Dallas, Texas, on Sunday, May 3, 1964 at about 10:00 o'clock P.M. The two cars were traveling in opposite directions, one East and the oth-

er West on Forest Lane. Appellants' son (upon whom appellants allege they were partially dependent for support and maintenance) was killed almost instantly. Appellee's wife sustained serious injuries from which she died a short time later. Appellee himself sustained injuries which hospitalized him for fifty-seven days. Appellee's minor daughter suffered less serious injuries.

Appellee filed an action against Henry Ritchey as third party defendant. It was alleged that Ritchey and appellants' son were engaged in a race immediately prior to the collision. Ritchey was the only eyewitness to the accident.

Appellants allege that their son was driving his Ford car in a westerly direction and appellee was driving his Chevrolet in an easterly direction at the time of the collision. On the other hand appellee alleges that he was driving his Chevrolet in a westerly direction and that it was appellants' son who was driving his Ford in an easterly direction. It is of prime importance to determine which car was being driven East on Forest Lane because the parties are in substantial agreement that the driver of the automobile traveling East, whoever he may have been, was guilty of the acts of negligence which proximately caused the collision and the injuries and deaths in question.

A jury found that appellee was not guilty of the acts of negligence alleged by appellants; that appellants' son was guilty of each of the acts of negligence alleged by appellee; that the collision was not an unavoidable accident; and that Henry Ritchey, the third party defendant, did not commit any of the acts of negligence charged against him by appellee. Based on these findings judgment was rendered that appellants recover nothing against appellee and that appellee recover nothing against the third party defendant Henry Ritchey.

Several of appellants' points on appeal attack the jury's findings on the ground that there is no evidence to support them, or that the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. These points call for a synopsis of the evidence.

## SYNOPSIS OF EVIDENCE

*Henry L. Ritchey* (appellants' witness), the only eyewitness to the collision, testified that he saw a Chevrolet automobile turn East onto Forest Lane, the same direction he was going on his way to his home in Garland, Texas, a neighboring city in Dallas County, Texas. He passed the Chevrolet, then a short time later the Chevrolet drew even with him and stayed even for a short distance. The Chevrolet was at that time in the left lane of Forest Lane. When the lights of an oncoming westbound car showed up, Ritchey says he decreased his speed to let the Chevrolet pass him and get back onto the right lane of the road out of the path of the approaching car. The Chevrolet did pass him and swerved to the right in front of him, but in doing so went onto the shoulder of the road, skidded at an angle, then went on across the road into the path of the approaching westbound car. The collision followed. Ritchey testified that he stopped his car, got out and went to the scene of the accident. The westbound car was a Ford. Its lone driver was hanging out of his car either dead or unconscious. The occupants of the eastbound Chevrolet were a man, a woman and a child. The occupants of the Chevrolet were screaming and moaning. Ritchey himself was so shocked at the sight and sound of the accident that he almost became nauseated. Almost immediately a 'teen age boy appeared on the scene. Ritchey told him to call the police and the boy left to do so. Soon a police officer appeared. Ritchey gave the officer a statement as to how the accident occurred. On cross-examination Ritchey stated that he had once been convicted in the State of Washington of the crime of "carnal knowledge of a female."

*Robert Andrew Pigg* (appellants' witness), sixteen years of age, testified that he

was driving North toward the intersection of Audelia Road and Forest Lane. While waiting at the intersection for traffic on Forest Lane to clear so that he could turn West onto Forest Lane, he saw a Ford automobile pass the intersection going West on Forest Lane. When traffic cleared he made his left turn and followed the Ford car. He saw it climb a rise or hill ahead of him then disappear on the far side of the rise. Shortly thereafter he heard the crash of the collision. Though he was not actually an eyewitness of the collision he arrived on the scene almost immediately thereafter. One of the cars in the collision was the Ford car which he had followed going West on Forest Lane. Ritchey was already there and told him to phone for the police, which he did from a nearby residence.

*Five Police Officers* (appellants' witnesses), testified that tire marks and other physical evidence at the scene of the accident indicated appellee's Chevrolet was traveling East at the time of the collision and that the Ford of appellants' son was traveling West; the physical evidence also indicated that the Chevrolet had hit the right shoulder of the road, then veered to the center of the road, or across the center, skidding at an angle to the point of impact with the westbound Ford. Two of the officers talked to Ritchey at the scene and gave some consideration to his statement in arriving at their conclusions. One officer arrived at the scene ten minutes after the accident; another twenty-five minutes after; one thirty-five minutes after.

*Gerald Don Dearing,* appellee (witness in his own behalf), testified that he left home about ten minutes to 10:00 o'clock P.M. to take his wife to work at Texas Instruments, Inc., eight miles distant, where she worked at night. His home is located southeast of Texas Instruments, Inc. The shortest route, and the one he habitually traveled in taking his wife to work, included a strip of Forest Lane leading in a westerly direction. He had traveled this route seventy-five or more times. Due to

loss of memory following the collision he remembered nothing after he crossed Northwest Highway, which was about halfway from his home to the place of the collision; consequently he could not testify as an eyewitness to the collision. Neither could his daughter, thirteen years of age, who was asleep on the back seat of the car at the time of the accident.

*Judd Carlisle* (appellee's witness), was formerly Inspector of Safety Education with the Texas Department of Public Safety, but presently is in business for himself as a traffic accident consultant. He had been employed by appellee to investigate this accident seven months after the collision. He visited the scene, examined photographs, and a map and depositions furnished by appellee's attorney. It was his opinion that the Chevrolet was traveling West and the Ford was traveling East at the time of the collision.

*Bobby Gerald Dean* (appellee's witness), knew Nutter, appellants' son, saw him at the "Barbecue Grill", a restaurant on Greenville Avenue, on the night of the accident; they went together to "Vickery Gardens" where they played pool a while, then returned to "Barbecue Grill". Nutter left "Barbecue Grill" at about 10:00 o'clock, saying he was going home. He lived in Garland. One way to get to Garland from "Barbecue Grill" is to go North on Greenville Avenue to Forest Lane then turn East on Forest Lane to Garland. That is the way the witness Dean traveled when he drove to his home in Garland about twenty minutes after Nutter had left. The witness' brother was a distant cousin of appellee's wife.

OPINION

Appellants' first, second and third points on appeal assert that there was no evidence to warrant the submission of Special Issues Nos. 1, 3, 5, 7 and 11–24 inclusive, and no evidence to support the findings of the jury in response to said issues.

The points are multifarious and general in their nature, therefore do not require our consideration. City of Nederland v. Callihan, Tex.Civ.App., 299 S.W.2d 380, 384; Sheffield v. Lewis, Tex.Civ.App., 287 S.W.2d 531, 537; Texas Employers' Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W.2d 893, 901. However, we have studied the evidence pertaining to all of the challenged issues [1] and have concluded that appellants' first, second and third points are without merit. They are accordingly overruled.

In their fourth point appellants say that there was insufficient evidence to support the submission of Special Issues Nos. 11–24 inclusive. An "insufficient evidence" point has come to mean in the terminology of our procedural law substantially the same as a point that a finding is so contrary to the overwhelming weight of the evidence as to be manifestly wrong. Such a point is not applicable to the question whether an issue should be submitted to the jury. It is the "no evidence" point which is applicable to the submission of issues. Missouri-Kansas-Texas RR. Co. v. Shelton, Tex.Civ.App., 383 S.W.2d 842, 849; Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," Tex.Law Rev., April 1960, Vol. 38, pp. 362, 365. Appellants' fourth point is overruled.

Appellants' fifth, sixth, seventh, eighth and ninth points in substance charge that the jury's answers to Special Issues Nos. 1, 3, 5, 7 and 11–24 inclusive are so contrary to the overwhelming weight of the evidence as to be manifestly wrong.

Though these points are multifarious and general in their nature we shall give them our careful consideration for they all revolve around one central question: Which of the two automobiles was traveling East on Forest Lane at the time of the collision?

As we have said, the parties to this appeal are in substantial agreement that it was the driver of the eastbound automobile who was guilty of the acts of negligence which caused the collision. But at the point their agreement ends. Appellants contend that it was appellee Gerald Don Dearing who was driving his Chevrolet car in an easterly direction. Appellee Dearing contends that it was appellants' son, Richard Frederick Nutter, who was driving his Ford car in an easterly direction. The answers of the jury to the special issues are quite obviously based on the belief of the jury that Richard Frederick Nutter in his Ford car was eastbound on Forest Lane at the time of the collision. The question then posed by appellants' points is this: Is there sufficient evidence to support the jury's implied finding that it was Richard Frederick Nutter who was driving his car in an easterly direction and therefore it was young Nutter's acts of negligence which proximately caused the collision?

We have concluded that the evidence in this case is insufficient to support the jury's verdict. Later in this opinion in passing on appellants' eleventh point we shall hold inadmissible the testimony of

---

1. Special Issues Nos. 1, 3, 5 and 7 inquired of the jury whether appellee Dearing operated his vehicle at a rate of speed in excess of that which a person of ordinary prudence in the exercise of ordinary care would have operated it; whether he was driving in excess of 45 miles per hour; whether he failed to keep a proper lookout; and whether he drove his car over and across the center of Forest Lane. The answers of the jury were unfavorable to appellants.

Special Issues Nos. 11–24 inclusive inquired of the jury whether Richard Frederick Nutter, appellants' son, kept a proper lookout; whether he was driving his automobile at a speed in excess of the lawful limit; whether he was driving his automobile at a speed greater than was reasonable and prudent; whether he failed to apply his brakes; whether he drove his automobile across the center stripe of Forest Lane; and whether each of the above acts and omissions was negligence and a proximate cause of the collision. The answers of the jury were unfavorable to appellants.

appellee Dearing as to the route he habitually followed in transporting his wife to her place of employment at Texas Instruments, Inc. Certainly without such testimony appellee's evidence is thin and speculative indeed. Yet we must say that even if we were to include said evidence we would still be of the opinion that the evidence as a whole is insufficient when weighed against that of the eyewitness, the near eyewitness and the five police officers. Appellants' fifth, sixth, seventh, eighth and ninth points are sustained.

In their tenth point appellants allege error on the part of the court in refusing to sever the cross-action or third party action filed by appellee against Henry Ritchey since the record as a whole reflects that said action was not filed in good faith, but was filed for the sole and only purpose of discrediting the testimony of the eyewitness, Henry Ritchey.

In his third party petition appellee pleaded that appellants' son and Ritchey were racing East on Forest Lane immediately prior to the collision. Ritchey testified that for a short distance his car and the driver of the Chevrolet car proceeded side by side. He denied that they were racing and the jury found in his favor in regard to his alleged negligence in connection with the collision. There is no basis in the record for us to hold that appellee's third party action was brought in bad faith. Moreover, in matters of severance the trial court is clothed with considerable discretionary authority. See Rules 38, 41, 51(b), 97, 174, Texas Rules of Civil Procedure, and authorities there cited. Appellants' tenth point is overruled.

In their eleventh point appellants complain of the court's permitting appellee to testify as to the route over which it had been his habit to drive his automobile from his home in delivering his wife to her place of employment at Texas Instruments, Inc. Appellants charge that this was error in view of the fact that there were eyewitnesses, namely, Henry Ritchey

and Robert Andrew Pigg, each of whom testified that he actually saw appellants' son's automobile traveling in a westerly direction on Forest Lane and saw appellee's automobile traveling in an easterly direction immediately prior to the collision.

The evidence as to appellee's habit is significant for if he followed what he said was his habitual route on the occasion in question he would be traveling West on Forest Lane at the time of the collision.

It is undisputed that Henry Ritchey was an eyewitness to the collision. Robert Andrew Pigg did not actually see the collision, but he testified that he followed young Nutter's Ford traveling West on Forest Lane, was nearby, heard the crash and arrived at the scene immediately thereafter. He recognized Nutter's Ford as the car that had traveled ahead of him West on Forest Lane.

Our Supreme Court in Missouri-Kansas-Texas RR. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 942, expressly held that "habit evidence should not be admitted where there is an eyewitness to the accident, even though the eyewitness be an employee of the opposite party." Two members of the court dissented and conflicting decisions were cited. But so far as we know the holding of the majority of the court has not been overruled and is still the rule in this State. See also Hudson v. Hightower, Tex.Civ.App., 394 S.W.2d 46; Hearn v. Mrs. Baird's Bread Co., Tex.Civ.App., 295 S.W.2d 689 (rev. on other grounds, 157 Tex. 159, 300 S.W.2d 646), and McCormick & Ray, "Texas Law of Evidence", Vol. II, p. 357, § 1513. We hold that it was error to admit the evidence in question.

To paraphrase the language of the McFerrin case we also hold that the evidence bears weightily on the issues in regard to the alleged negligence of both appellants' son and of appellee. Without this habit evidence there is very little evidence to support the jury's findings. Bearing in

mind Rule 434, T.R.C.P. we must say that the evidence was calculated to cause and probably did cause an improper verdict. Appellants' eleventh point is sustained.

In their twelfth point appellants allege error in admitting into evidence a map which was intended to show the streets over which appellee said he habitually traveled in transporting his wife to her employment at Texas Instruments, Inc. Since we have held that appellee's testimony in regard to the route he habitually traveled was inadmissible, the map is also inadmissible. Appellants' twelfth point is sustained.

■ Appellants' thirteenth point complains of the court's excluding from evidence the testimony of Lloyd Middleton, a police officer, who would have testified to a statement made to him by eyewitness Ritchey about ten minutes after the collision. Appellants' position is that the testimony was admissible as *res gestae.*

Ritchey told Middleton that the Chevrolet car was being driven East on Forest Lane at the time of the accident. He was in a state of high excitement at the time. We believe the statement was admissible. Carrick v. Hedrick, Tex.Civ.App., 351 S.W. 2d 659, 661; McCormick & Ray, "Texas Law of Evidence", Vol. I, §§ 911–927, pp. 678–718. However, the error must be considered harmless. Middleton stated that he gave some consideration to Ritchey's statement in reaching his conclusion that the Chevrolet was eastbound at the time of the collision. Middleton's and Ritchey's testimony and other evidence in the record could hardly have left any doubt in the jury's mind as to the substance of Ritchey's statement to Middleton. Appellants' thirteenth point is overruled.

The substance of appellants' fourteenth, fifteenth and sixteenth points is that it was error for the court to elicit by cross-examination from the witness Henry Ritchey for the purpose of impeachment that the witness had been convicted in the State of Washington of the alleged offense of "carnal knowledge of a female".

On cross-examination the witness Ritchey, who was also a third party defendant, and who obviously was not a lawyer, was asked whether he had ever been convicted of a felony. He answered "No". Objection was then made that the witness was being asked a question of law. The court stated that he believed the objection was good, but never did really rule on the objection and the jury was not instructed to disregard the answer.

Then the witness was asked whether he had ever been convicted of a crime. Objection to this question on the same grounds was overruled. The witness answered in the affirmative. Further examination brought out that in 1958 in the State of Washington the witness had been convicted of the crime of "carnal knowledge of a female".

The latest pronouncement by our Supreme Court on the admissibility of evidence of a criminal conviction for purposes of impeachment will be found in Compton v. Jay, Tex., 389 S.W.2d 639. It was there held that prior felony convictions for driving while intoxicated are not admissible for that purpose, apparently on the ground that the offense did not involve moral turpitude. In reaching its decision the court held, as we understand the opinion, that the evidence of a criminal offense, whether a felony or a misdemeanor, is admissible for impeachment purposes in a civil action only if the offense involved moral turpitude. The court cited Texas & N. O. Ry. Co. v. Parry, 12 S.W.2d 997 (Tex.Comm.App.), McCormick & Ray, "Texas Law of Evidence" (2d Ed.), § 660, and Lieck's Legal Trial Aid, 2d Ed. p. 142.

■ We believe the rule in Texas to be that to be admissible as impeaching evidence in a civil case it must be shown that the conviction (1) was for an offense defined in the criminal statutes, and (2) must involve moral turpitude.

Texas courts will of course take judicial knowledge of our own statutes defining criminal offenses. But not so as to the statutes of other states.

The testimony elicited from the witness Ritchey does not meet the above requirements. The term "carnal knowledge" has been held to mean the same as "sexual intercourse". Calhoun v. State, 134 Tex. Cr.R. 423, 115 S.W.2d 965, 967. See also 6 "Words and Phrases" 271, under the heading "Carnal Knowledge". Under the Texas Penal Code a number of acts involving sexual intercourse are made criminal offenses: rape, seduction, fornication, adultery and others. Certainly most if not all of these offenses involve moral turpitude. But they are all concerned with and are limited to particular circumstances under which carnal knowledge of a female (that is, sexual intercourse with a female) is considered repugnant to the public welfare, therefore is made a criminal offense. There is no statute of this State and we know of none in any other jurisdiction which is so broad in its scope as to make carnal knowledge of a female of itself a criminal offense.

It is our opinion that a party seeking to impeach the credibility of a witness by offering evidence of a conviction of a criminal offense must carry the burden of showing that the alleged offense was one within the meaning of the criminal statutes Appellee in this instance has failed to do so. Under the circumstances here presented we believe this highly inflammatory evidence was not admissible. Appellants' fourteenth, fifteenth and sixteenth points are sustained.

In his brief appellee says that "The jury found * * * that Appellants themselves, the parents of the adult Richard Nutter, suffered no pecuniary loss * * *." The jury did answer the damage issue "None". But the submitted issue inquired what pecuniary loss was sustained by the parents *as a direct and proximate result*

*of the negligence* if any of the defendant, Gerald Don Dearing * * *." (Emphasis supplied.) The jury had already found that the death of appellants' son had not been caused by the *negligence* of appellee. So the jury's finding cannot be interpreted to mean that appellants had not suffered any pecuniary loss as a result of the death of their son.

The judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.