**Chester Lee TERRY, Appellant,**

v.

**BUTTERCUP OIL CORPORATION et al., Appellees.**

**No. 15051.**

Court of Civil Appeals of Texas, San Antonio.

Oct. 4, 1972.

Rehearing Denied Nov. 22, 1972.

Perkins, Davis, Oden & Warburton, Alice, for appellant.

James W. Wray, Jr., H. T. Hermansen, Jr., Dyer, Redford, Burnett, Wray, Woolsey & Dunham, Corpus Christi, for appellees.

CADENA, Justice.

Plaintiff, Chester Lee Terry, seeks damages for personal injuries suffered by him when he was struck by an automobile operated by defendant, Michelle Lynd, one of the defendants, and owned by the other defendant, Buttercup Oil Corporation. The trial court, after granting Buttercup's motion for instructed verdict, submitted the case to the jury on special issues relating to the liability of the defendant, Michelle Lynd. The jury, while finding that Miss Lynd was negligent, found that plaintiff was contributorily negligent, and the trial court then entered the judgment, from which plaintiff appeals, in favor of defendants.

The accident occurred on October 31, 1969, on Third Street in the City of Alice. Prior to the accident, Halloween pranksters threw an egg at the automobile being operated by Miss Lynd. The egg splattered on the lower portion of the windshield on the driver's side. Miss Lynd's vision was not obscured by the presence of the shattered egg on the windshield, and she drove about 15 blocks with no difficulty. Some 300 feet from the site of the accident, she decided to clean the windshield with the windshield wipers. However, the device which served the function of squirting water on the windshield was inoperative, with the result that the movement of the windshield wipers smeared the contents of the shattered egg across the windshield on the driver's side. While Miss Lynd could see directly to the front and to the left, she could not see to the right. As a consequence, Miss Lynd did not see plaintiff before the car struck him.

Third Street is a two-way street carrying eastbound and westbound traffic. The Central Fire Station is located on the north side of Third Street, at or near the intersection of Third Street and Almond Street. Plaintiff, a volunteer fireman, had reported to the station in answer to a fire alarm. He was not a member of the crew manning the fire truck which had been dispatched to the scene of the fire, but remained at the station with other volunteer firemen in case another alarm came in or another truck was needed.

Miss Lynd was driving west on Third Street when her vehicle struck plaintiff. The jury found that when he was struck, plaintiff was standing in the street. The evidence is undisputed that plaintiff was facing west, with his back toward the oncoming westbound traffic. Apparently, the vehicle operated by Miss Lynd was the only westbound automobile using Third Street near the scene of the accident. The right front side of the vehicle struck plaintiff in the back. Neither plaintiff nor any of the other firemen saw the car which struck plaintiff prior to the impact.

Insofar as relevant to this appeal, the jury found, in response to Special Issues 5–12, both inclusive, that "on the occasion in question," plaintiff was standing "in the street" (Issue No. 5) at a point which was not a crosswalk (Issue No. 6) and that his failure to yield to the vehicle driven by Miss Lynd was a proximate cause of the accident (Issue No. 7). The jury further found that plaintiff was standing "with his back to the flow of traffic" (Issue No. 8) and that such conduct was negligence (Issue No. 9) which was a proximate cause of the accident (Issue No. 10). Finally, the jury found that plaintiff "failed to keep such a lookout as a person using ordinary care would have kept" (Issue No. 11) and that such failure was a proximate cause of the accident (Issue No. 12).

Plaintiff here presents 62 points of error, predicated on a motion for new trial which contains 83 assignments, one of which is divided into eight different specifications of error.

The first two points challenge the action of the trial court in granting Buttercup Oil Corporation's motion for an instructed verdict.

█ The vehicle which Miss Lynd was operating was owned by Buttercup and was assigned to Robert Lynd, president of the corporation and father of Miss Lynd. Mr. Lynd was charged with the maintenance and upkeep of the vehicle, which he used three or four times a week. On the night of the accident, he had permitted his daughter to use the car for the purpose of attending a football game. Miss Lynd was the holder of a valid driver's license which had been issued to her about three months before the accident. Plaintiff contends that there was a fact issue relating to the negligence of Buttercup in allowing Miss Lynd to drive the vehicle with the defective wiper device.

The evidence is undisputed that the wiper device was inoperative and that the defective condition could have been discov-ered easily merely by pressing the button which would activate the device. However, there is no evidence indicating how long the defect had existed. The evidence is merely to the effect that the device might have been malfunctioning for thirty days or for thirty minutes. Under these circumstances, there is no evidence which would support a finding that the failure to discover the defect constituted negligence, particularly in view of the fact that the only testimony concerning the nature of the defect was to the effect that the cap to the plastic container holding the water "didn't seem to hold" and that "something leaked."

█ In his brief, plaintiff relies on the doctrine of *res ipsa loquitur*. His pleadings contain no allegations indicating that he would rely on this doctrine. He is, therefore, not entitled to invoke the doctrine. McClish v. R. C. Young Feed & Seed Co., 225 S.W.2d 910 (Tex.Civ.App.— Amarillo 1949, writ ref'd).

█ Plaintiff's third point asserts that the trial court erred in informing the jury that it had granted Buttercup's motion for instructed verdict. While this point is grouped with the first two points in plaintiff's "restatement" of his points for the purpose of argument, there is nothing in the "statement" or "argument" under the restatement of the three points which is relevant to this asserted point of error. No reference is made to any portion of the record where the jury was informed of the granting of the motion for instructed verdict; the brief contains no reference to any portion of the record which indicates that the trial court ever ruled on the plaintiff's motion to hide from the jury the fact that Buttercup's motion had been granted; plaintiff's brief does not call our attention to any portion of the record which indicates that the jury was informed of the trial court's ruling; plaintiff's brief, in the "statement" and "argument" following the restatement of the first three points cites no authorities and, in fact, contains no

mention of the fact that the jury was told of the ruling. Plaintiff's third point must be classified as not briefed and will not be considered.

In Points 4 through 14, plaintiff asserts that the trial court erred in excluding testimony to the effect that certain portions of Third Street, including that portion in which, according to some of the testimony, plaintiff was standing at the time he was struck, were "untraveled." The résumé of this excluded testimony which follows is taken from the bill of exceptions perfected by plaintiff after the trial court's exclusionary ruling.

The excluded testimony was to the effect that in an area bounded by the north curb line of Third Street and a line in the street five feet south of such curb line, there was more debris than in the center portion of the westbound lane. Plaintiff sought to introduce evidence from three witnesses to the effect that the area between these two lines constituted the "untraveled" portion of the "roadway." In support of these points of error, plaintiff relies on Section 13(c) of Article 6701d, Tex.Rev.Civ.Stat. Ann. (1969) which, at the time this case was tried, defined "roadway" as "[t]hat portion of a highway improved, designed or ordinarily used for vehicular travel".

The excluded testimony would have been proffered by three witnesses, all of whom would have classified the five-foot strip south of the north curb line as "untraveled," based on the greater accumulation of debris on that portion of the lane nearer the curb line. Plaintiff stated that when he used the terms "traveled portion" and "untraveled portion" he was merely saying that the majority of automobiles using Third Street "go right down the middle of each lane"; that what he called the traveled portion and the untraveled portion are both "black top"; and that what he referred to as the "untraveled" portion is "still street." The police officer who investigated the accident would have testified that that portion which he referred to as the "untraveled" portion of Third Street "is still a street and you could travel on it if you wanted to." He also would have testified that, in fact, automobiles do travel on such "untraveled" portion of Third Street, and that when he used the term "untraveled portion" he was merely indicating that more cars travel "in the middle of the lane than travel to the right of it," and that, if he applied a criterion of absence or presence of debris, he would have to say that "two or three feet either side of the center line" of Third Street would be considered "untraveled" because more cars "travel in the middle of the lane than over next to the center line" of the street.

The city manager of Alice, if permitted, would have told the jury that the presence of greater debris in the area nearer the curb "would indicate that the particular portion of the street, or that particular portion of the roadway, is relatively untraveled, or certainly is much less . . . traveled." He would have testified that the portion nearer the curb is similar to a "shoulder" in that "it's less traveled," but that "if it's in the street, and inside the curb, it's certainly not regarded as the shoulder."

■ It is clear that, under the excluded testimony, all of Third Street was "designed" and "improved" for vehicular travel and was not excluded from the definition of "roadway" contained in the statutory provision on which plaintiff relies. The fact that the portion of Third Street nearer the curb which was designed and improved for vehicular travel was not used as extensively as the paved portion in the center of the westbound lane would not support the conclusion that the portion nearer the curb is not a part of the street which is improved and designed for vehicular travel.

■ The statement of facts makes it clear that plaintiff desired to offer the excluded evidence for the purpose of showing that, even if he was standing within the "untraveled" five-foot strip, he was not

standing in the street or "roadway." This evidence, if admitted, would not have supported plaintiff's contention that he was not in the street or roadway. In his brief, plaintiff argues that the evidence was relevant and, therefore, admissible, with respect to the issue of whether or not plaintiff was negligent in standing in the five-foot strip, in view of the fact that such strip was less frequently traveled than the portion in the center of the lane. Where testimony is offered for two purposes, and it is admissible for one purpose but not for the other, its exclusion is not error where the proponent of the evidence does not limit its offer for the admissible purpose only. Singleton v. Carmichael, 305 S.W.2d 379 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.).

■ Plaintiff's statement to the effect that a person of ordinary prudence would have "felt safe" in standing in that portion of Third Street within five feet of the curb was properly excluded. 2 McCormick & Ray, Texas Evidence § 1431, pp. 281–84 (2d ed. 1956).

■ Points 15 and 16 complain of the admission, over plaintiff's objection, of the testimony of defendants' witness, Reed, to the effect that when Reed arrived at the scene of the accident, shortly after it had occurred, a person identified by Reed as a fireman had told Reed that plaintiff was standing in the street at the time that he was struck by the vehicle operated by Miss Lynd.

Plaintiff's witness, McCollum, a volunteer fireman, had previously testified that, at the time that the automobile struck plaintiff, plaintiff and McCollum were standing on a ramp or driveway in front of the fire station, not in the street. According to McCollum, immediately after he heard the sound of the impact he was struck or brushed by some part of plaintiff's body. He also testified that he had told the investigating officer that plaintiff was not standing in the street, and denied

telling Reed that plaintiff was in the street. The investigating officer testified that McCollum told him that plaintiff was standing in the street.

Reed, although he identified his informant as a fireman, admitted that he did not know the declarant's name and was unable to identify him as McCollum, although, based on a reading of the depositions, he felt sure that the declarant was McCollum.

Reed's account of the statements of the declarant closely parallel the testimony given by McCollum concerning the conduct of McCollum and plaintiff immediately preceding the accident, including a statement to the effect that, immediately after the impact, some portion of plaintiff's body had struck the declarant.

The circumstances related by Reed, when considered in connection with McCollum's testimony and the fact that all of the testimony is to the effect that, at the time of the accident, McCollum was the only person standing close to plaintiff, sufficiently identify McCollum as the person whose statements were the subject of Reed's testimony. In any event, since plaintiff had previously offered testimony, on direct examination of his medical witness, to the effect that "somebody" had told the doctor who examined plaintiff that plaintiff was standing in the street when he was struck, the error, if any, in admitting Reed's testimony was harmless. Rowe v. Liles, 226 S.W.2d 253 (Tex.Civ.App.—Waco 1950, writ ref'd).

■ The remaining 46 points of error are "grouped" by plaintiff for the purpose of argument. Five of these points (17–21) assert that the trial court erred in denying plaintiff's motion for judgment n. o. v. Thirty-six points (24–59) condemn the submission, over plaintiff's objections, of Special Issues 5–12, relating to plaintiff's contributory negligence. Three points (60–62) merely argue that, because of the claimed errors embodied in points 1–59, the trial

court erred in overruling plaintiff's motion for new trial. These three points present no contention which is not embodied in the other points and, therefore, are superfluous. Point 23 complains of the trial court's failure to submit plaintiff's requested Special Issue No. 5. Point 22 states that the trial court erred " . . . in submitting the special issues as submitted and not sustaining the objections and exceptions to such issues as propounded by the Plaintiff." Both the point and the paragraph in the motion for new trial on which it is based are too general to be considered, particularly in view of the fact that plaintiff confronted the trial court with some 40 objections and exceptions to the charge.

The statement, argument and authorities under points 17–62 may be summarized as follows:

Under the heading "Facts," plaintiff outlines the evidence supporting the conclusion that Miss Lynd was negligent. In addition, he points out that plaintiff, who was standing with his back to the oncoming vehicle at all times, never saw the car before it struck him.

Plaintiff describes the following points as "Matters Covered Herein": (1) The submission to the jury, over plaintiff's objections, of Special Issues 5–12; (2) the error of the trial court in overruling plaintiff's motion for judgment n. o. v.; and (3) the error of the trial court in not granting plaintiff's motion for new trial. We are then informed that these points are based on the legal and factual insufficiency of the evidence, and on the contention that the answers to Special Issues 5–12 are against the overwhelming weight and preponderance of the evidence. Plaintiff then adds that "also included" in points 17–62 is the error of the trial court in predicating Special Issues 5–10 upon the " . . . improper definition of 'street' as opposed to the requested definition 'roadway', and the same having been covered in our statement, arguments and authorities under . . . " points 4–14. Finally, plaintiff

states that error is also claimed because the trial court submitted an issue inquiring whether plaintiff was standing in a crosswalk, since there is no evidence that, at the time he was struck, plaintiff was in the act of crossing the street.

Under "Authorities," plaintiff cites cases supporting the following general statements: (1) A party is under no duty to guard against a dangerous situation if he is justifiably ignorant of the existence of the danger. (2) A person is not bound to anticipate negligent or unlawful conduct on the part of another. (3) A pedestrian has a right to use the portion of a street that is ordinarily reserved for vehicular traffic, so that the mere fact that one is standing or walking in a street does not make him guilty of contributory negligence. (4) The operation of a motor vehicle while the windshield is obscured may constitute negligence as a matter of law. (5) The jury's answers to the contributory negligence issues are against the overwhelming weight and preponderance of the evidence.

The "Argument" under points 17–62 consists of two paragraphs totalling twenty-six lines. In the first paragraph it is said that the evidence conclusively establishes that plaintiff was unaware of the approach of the vehicle which struck him and that, there being no other traffic, plaintiff had no reason to believe he would be in any danger while standing in the street. The remainder of this paragraph points out that Miss Lynd, as the jury found, was negligent in continuing to drive while her vision was obscured by the smeared windshield.

The second paragraph of the "Argument" consists of one sentence embodying the general statement that the answers of the jury to the Special Issues " . . . were certainly against the great and overwhelming weight of the preponderance of the evidence and should have been disregarded. . . . "

It is doubtful if the presentation of points 17–62 meets the requirements of our

rules relating to the contents of appellant's brief. Rule 418, Texas Rules of Civil Procedure. For example, although 36 of these points complain of the submission of Special Issues 5–12, none of such issues is set out in the discussion of these points. Rule 418(c) requires that if complaint is made of any charge given or refused, "such charge shall be set out in full" in the brief.

■ Of these final 46 points, 27 which assign as error the overruling of plaintiff's motion for judgment n. o. v. and the submission of Special Issues 5–12, are based on the sufficiency of the evidence to support the answers to Issues 5–12. Although several of these points rest on the asserted "factual" insufficiency of the evidence, it is well settled that motions for judgment n. o. v. and objections to the submission of special issues, when based on the quantum of evidence, present only "no evidence" questions. Owens v. Rogers, 446 S.W.2d 865 (Tex.1969); Garza v. Alviar, 395 S.W.2d 821 (Tex.1965).

■ Although the evidence relating to plaintiff's position at the time of the impact is conflicting, there is evidence to the effect that he was standing in the street. The evidence is undisputed that, wherever he was standing, he was facing west, with his back to any vehicular traffic which might be approaching from the east, and that he did not see the westbound vehicle which struck him and made no effort to move out of the way. The evidence is also undisputed that, if plaintiff was standing in the street, he was standing in an area which was not a crosswalk. We cannot say that there is "no evidence" supporting the jury's findings as to plaintiff's position and conduct, nor can we say that, as a matter of law, such conduct did not constitute negligence which was a proximate cause of plaintiff's injuries. Points 17–21, 25–27, 30, 31, 36, 37, 39–44, 46–48, 52–54, and 57–59 are without merit.

■ In point 23 plaintiff argues that the trial court erred in refusing to submit his requested Special Issue No. 5, inquiring whether plaintiff was standing in the "roadway" and embodying the definition of "roadway" found in Section 13(c) of Article 6701d, supra. The brief does not direct our attention to any portion of the transcript showing that the submission of such an issue was requested. There is in the transcript an instrument captioned "Plaintiff's Tendered Request for Special Issues 1 to 4 and 5," but nowhere in this instrument is there a request for the submission of the "roadway" issue. In any event, we do not see how the failure to submit an issue embodying one of defendants' asserted grounds of defense could injure plaintiff.

We consider next the non-evidentiary challenges to the submission of the contributory negligence issues, directing our attention to the submission of each issue.

### Issue No. 5.

■ Plaintiff complains of the submission of an issue inquiring whether plaintiff was standing in the "street," insisting that the proper issue should have been directed to ascertaining whether he was standing in the "roadway." Defendants expressly pleaded, as a ground of their contributory negligence defense, that plaintiff was standing in the street at the time of the impact. In view of the conflict in the testimony, the submission of the "street" issue was proper.

### Issue No. 6.

■ Special Issue No. 6 inquired whether, "on the occasion in question," plaintiff was standing in the street "at a point which was not within a crosswalk." It may be, as suggested by plaintiff, that this issue should not have been submitted. In the first place, the evidence is undisputed that the point in the street at which plaintiff was standing was not a crosswalk. In the second place, the "crosswalk" issue would be relevant only if, at the time of the accident, plaintiff was engaged in the act of crossing a "roadway," and, as plain-

tiff points out in point 29, there is no evidence that, at the time of the impact, plaintiff was crossing the roadway, or even crossing the street. But plaintiff presents no argument suggesting that the submission of this issue was in any way prejudicial.

### Issue No. 7.

■ Issue No. 7 inquires whether the failure of plaintiff " . . . to yield to the vehicle driven by Michele Lynd was a proximate cause of the occurrence in question." Plaintiff contends that the inquiry concerning the failure to yield the right of way is predicated upon Article 6701d, supra, and such issue is not supported by the pleadings (point 33); that Article 6701d imposes no duty on plaintiff to yield the right of way, since there is no evidence that plaintiff was crossing a "roadway" (point 34); and that such issue is predicated on plaintiff's "being in the street," when "the proper submission to the jury would have had to do with being in the roadway." Assuming that Article 6701d is inapplicable, plaintiff's brief contains no suggestion that a person standing in a street is, under common law rules, under no duty to move out of the way of an oncoming vehicle. In any event, there is nothing in plaintiff's brief to support the conclusion that the submission of this issue, assuming it to be an irrelevant issue, affected the outcome of this case. Points 33–35 are overruled.

### Issue No. 8.

■ Point 38 claims that the submission of Issue No. 8, inquiring whether plaintiff "was standing with his back to the flow of traffic," is a comment on the weight of the evidence. No effort is made in plaintiff's brief to explain how the submission of this issue constitutes a comment on the weight of the testimony. Nor does the brief indicate the portion of the transcript where plaintiff urged this objection

to the submission of the issue. In any event, the evidence is undisputed that plaintiff was standing with his back to westbound traffic. The point presents no reason for overturning the judgment.

### Issue No. 9.

■ Issue 9 asks whether plaintiff, in standing with his "back to the flow of traffic," was negligent. Plaintiff's point 45 urges that Issue 9 "presupposes and is predicated on an affirmative answer to special issue" 5 (was plaintiff standing in the street?), and that Issue 5 " . . . is objectionable in that the Court attempts to define the street as opposed to roadway and the duties in connection with the conduct of . . ." plaintiff " . . . when he might be in the street as opposed to the roadway." No argument is presented in support of the contention that a person may stand in a street, as opposed to a roadway, with his back to oncoming traffic without being negligent. The brief does not direct our attention to a specific portion of the transcript wherein this specific objection was urged. The point is overruled.

### Issue No. 10.

Point 49, except for the fact that it relates to the submission of Issue No. 10 (inquiring whether the conduct of plaintiff in standing with his back to oncoming traffic was a proximate cause of his injuries), rather than Issue No. 9, embodies the same contentions as are contained in point 45. For the reasons stated in the preceding paragraph, this point is overruled.

### Issue No. 11.

Issue 11 asks whether plaintiff failed to keep such a lookout as " . . . a person using ordinary care would have kept." Points 50 and 51 advance the proposition that a person standing in a "street" as opposed to a "roadway" is under no duty to keep a proper lookout. We know of no

authority, and plaintiff calls our attention to none, which supports the conclusion that a person may stand in a street without keeping a lookout for oncoming traffic, Points 50 and 51 are overruled.

*Issue No. 12.*

Issue No. 12 is the "proximate cause" issue submitted in conjunction with the "lookout" issue embodied in Issue 11. The two attacks on the submission of Issue 12 are predicated on the notion that a person standing in a street is under no duty to keep a lookout for oncoming vehicles. We reject this contention and, accordingly, overrule points 55 and 56.

As pointed out above, point 22 is too general to be considered. Points 60–62 present no grounds for reversal other than those embodied in the preceding 59 points.

The judgment of the trial court is affirmed.