Bob LINDER et ux., Appellants,

v.

**CITIZENS STATE BANK OF MALA-
KOFF, TEXAS, Appellee.**

No. 829.

Court of Civil Appeals of Texas,
Tyler.

Sept. 11, 1975.

Rehearing Denied Oct. 16, 1975.

Kurt Philipps, Morgan, Shumpert, Huff, Philipps, Mosley & Co., Kaufman, for appellants.

Melvin G. Bateman, Moore, Bateman & George, Athens, for appellee.

McKAY, Justice.

This is an appeal from a judgment notwithstanding the verdict. Appellants brought this suit against Citizens State Bank of Malakoff alleging breach of a fiduciary relationship. Appellant also alleged that Appellee was negligent in disbursing more money than was due to the general contractor who was building a house for Appellant, and that Appellee exerted undue influence on Appellant. The trial court refused to submit the case to the jury on the negligence and undue influence allegations, but did submit issues on fiduciary relationship, and the jury found for Appellants on a breach of a fiduciary duty and found damages at $8,000.00, the amount necessary to complete Appellant's house in excess of the contract price. Appellee filed a motion for judgment notwithstanding the verdict, which was granted by the Court. Appellants have appealed from the Judgment N.O.V.

Appellants complain in Point One that the trial court erred in granting Appellee's motion for judgment notwithstanding the verdict.

Rule 301, T.R.C.P., provides:

"The judgment of the court shall conform to the * * * verdict * * *. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and * * disregard any Special Issue Jury Finding that has no support in the evidence."

In acting upon a motion for judgment notwithstanding the verdict all testimony must be considered in a light most favorable to the party against whom the motion is sought, and every reasonable in-

tendment deducible from the evidence is to be indulged in such party's favor, and to sustain the action of the trial court in granting the motion it must be determined that there is no evidence with probative force upon which the jury could have made the findings relied upon. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547 (1962); *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194 (1952).

■■■ However, where, "Under no view of the pleadings and evidence, the plaintiff is entitled to recover, the submission of the issues and the findings of the jury are immaterial, and may be disregarded by the court." *Vogel v. Allen,* 118 Tex. 196, 13 S.W.2d 340 (Comm. of App., 1929). Any finding made by a jury on an issue which is not controlling may be disregarded by the trial court. *Whittenburg v. Miller,* 139 Tex. 586, 164 S.W.2d 497 (1942).

A recitation of the facts in some detail is necessary. Appellants in 1972 decided to build a new house on a lot next to their residence on Cedar Creek Lake. Appellant Linder was engaged in the trucking business and also operated a building materials and supply store. An occasional customer at Linder's store, Brock Engle, was chosen to build the house, and Engle prepared plans and specifications. On May 4, 1972, at Engle's suggestion, Linder met with Nat Ryan, Vice President of Citizens State Bank, and the conversation between Linder and Ryan serves as the basis of Appellant's cause of action.

At this meeting Linder, according to his testimony, requested Ryan to explain how interim financing was done, and Ryan told him (1) that the amount of the loan for interim financing depends upon the commitment letter from the one doing the permanent financing, and that the First National Bank of Corsicana had made a commitment of $34,000 for permanent financing, (2) that 20% of the funds would be retained until completion and closing, (3) that as to the remaining 80%, the usual procedure is for the contractor to make three draws, and as progress is made on the house, it is inspected regularly before any advances are made, and that the first draw is for the foundation, the second for the "dry in", and the third being the "trim out", and the remaining 20% retained until completion, (4) that the contractor is required to open an account at the bank and advances are deposited therein and the bank monitors contractor's checks to see that the money is used on the house, and (5) that the bank watches closely and inspects regularly and there is no way for the contractor to get ahead of the bank. Linder testified that he had no prior knowledge of interim financing and that as a result of this conversation he felt confident no problems would arise concerning interim financing.

A mechanic's lien note was executed by Linder to Engle for $35,000, and on June 2, 1972, Appellee received the commitment letter from First National, Corsicana, for $34,000 for permanent financing.

Construction began on the house, and on June 29, 1972, Linder had a brief conversation with Ryan at the construction site while Ryan was making an inspection. On June 9th Engle and Linder executed a "cost-plus 8%" written contract because Linder wanted to supply much of the materials and to do as much of the work as he could to reduce the cost. Subsequently, Linder and Engle executed a "flat dollar" contract (also called "turn key") for the construction of the house for $34,000.

Linder testified that he next saw Ryan in late July when Ryan was making another inspection, and Ryan reported that Engle had drawn approximately $15,000, and that there was a shortage of brick which was unusual and required a variation from the three-draw system. Linder said he had never been asked to approve any advance made by the bank.

On August 4, 1972, according to Linder, he talked by telephone with Eddie Garrison, President of the bank, and Linder told Garrison that Engle owed Linder's store $2,000 for materials and had not paid the bill and

he was worried that Engle was writing hot checks or not paying his bills. On September 12, 1972, Linder again talked to Garrison by telephone and told him Engle's unpaid bill at Linder's store was $4,000 and he was becoming more concerned. Garrison reported that $17,000 had been advanced to Engle up to that time.

Between September 12 and 25 Linder again talked with Ryan and told him some of the subcontractors were complaining about hot checks and slow payment.

On September 25, 1972, Linder again telephoned Garrison and reported that Engle's bill at Linder's store was now $6,000, but, Linder testified, Garrison told him not to worry because Engle had to pay for all materials before closing out. Garrison reported that $18,785 had been advanced and that Engle could only draw another $2,900 before closing.

Linder further testified that in late October he heard that Engle had left town, and on October 24th or 25th Garrison informed Linder that the bank had ordered work on Linder's house "shut down" and that Linder could either complete the house himself or the bank would foreclose, and that $27,200 had been advanced to Engle and $6,800 was still retained by the bank, and that he had unpaid bills on the house amounting to $7,122.

On November 2, 1972, Linder met with Engle and Ed Reichelt, attorney for the bank, and Engle said he would have to abandon the construction of the house, and Reichelt told Linder that he, Linder, would have to complete the house or face foreclosure. At that time Linder testified that there was $9,000 in unpaid bills outstanding and that the cost to complete the house was an additional $9,000. Linder borrowed $10,-000 from a personal friend and proceeded to complete construction of the house. He testified that the total cost to complete the house per the terms of the contract was $47,000 which was $12,113.77 over the contract price.

Various exhibits were introduced showing a list of bills paid during construction, numerous defects in construction and portions of the house left unfinished at the time Engle abandoned the construction of the house.

Linder testified that as a result of his conversation with Ryan that he relied on Appellee bank to supervise the payment of materialmen, bills for supplies, and the employees of Engle, and that he relied on the statements of Ryan and Garrison concerning interim financing and especially the statement that there was no way for the builder to get ahead of the bank.

On cross-examination Linder testified that he had had no previous contact with Appellee bank prior to May 4, 1972, that he knew he could have created a joint account with Engle, and that the bank was not a party to the mechanic's and materialmen's lien note and contract. He further testified that he knew of the assignment of the note and contract to the bank, that Ryan inspected the house weekly while under construction, and that the bank never told him specifically that it was handling the interim financing for his benefit. He said it was not unreasonable for the bank to threaten foreclosure, and that the bank was not a party to the subsequent contracts of June 9 and July 6 between him and Engle.

Appellants argue that the determination of whether facts exist which would create a confidential or fiduciary relationship is for the jury, citing *Tuck v. Miller*, 483 S.W.2d 898 (Tex.Civ.App., Austin, 1972, ref., n. r. e.) and *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944). Appellant also maintains that a relationship of trust and confidence may be shown to arise informally and for purely personal relationships, citing *Thigpen v. Locke*, 363 S.W.2d 247 (Tex., 1963), and that such informal relationships include moral, social, domestic or merely personal ones where one person trusts and relies upon another, citing *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951).

■ All of the above cited cases are constructive trust cases, and it has been held in numerous cases, including *Thigpen v. Locke,* and *Fitz-Gerald v. Hull,* that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962); *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960); *Smith v. Bolin,* 153 Tex. 486, 271 S.W.2d 93 (1954). This proposition was reaffirmed in *Consolidated Gas & Equipment Co. of America v. Thompson,* 405 S.W.2d 333 (Tex., 1966), and by the more recent case of *Tyra v. Woodson,* 495 S.W.2d 211 (Tex., 1973).

■ As pointed out in *Consolidated Gas* fiduciary relationships usually arise in cases of attorney and client, partners, parent and child and joint ventures, but they may arise from "moral, social, domestic or purely personal" relationships. *Thigpen v. Locke,* supra. But in these informal relationships there must have been a previous relationship which placed the parties in a position of confidence and trust. *Consolidated Gas & Equipment Co. v. Thompson,* supra. The actual relationship between the parties must be examined to determine whether there was such a confidential, fiduciary or informal relationship so as to warrant the erection of a constructive trust. The disappointment of a mere expectation alone does not give rise to a constructive trust. 76 Am.Jur.2d Trusts, Sec. 226.

In the instant case there was no previous relationship between Appellant Linder and Appellee bank. Linder had never had any business transaction with Appellee—not even a deposit or an account. After Engle assigned Linder's note to the bank Linder then developed a relationship which gave rise to this suit.

■ Appellant did not allege Appellee was guilty of fraud, or was unjustly enriched, but, in effect, alleged and endeavored to prove that Appellee bank failed to perform an agreement or to carry out a promise, and in our opinion, such does not give rise to a constructive trust. 76 Am. Jur.2d Trusts, Sec. 224.

The record fails to show that Appellant did not get what he paid for. There is no proof in the record of the value of the house at the time Engle abandoned the project. It seems unquestioned that Appellants would have a cause of action for breach of contract against Engle, the contractor, but he chose instead to attempt to hold the Appellee liable because it failed to advance the funds as promised.

■ It is elementary that for a plaintiff to recover damages from a defendant, the plaintiff must prove that the alleged wrongful conduct of the defendant caused the alleged damages. *Maloney v. Roberts,* 32 Tex. 136 (1869); *International Great Northern & Co. v. King,* 41 S.W.2d 234 (Tex.Comm.App., 1931, holding approved); *Missouri, K & T Ry. Co. of Texas v. Raney,* 44 Tex.Civ.App. 517, 99 S.W. 589 (1907, err. ref.); *LeBlanc, Inc. v. Gulf Bitulithic Company,* 412 S.W.2d 86 (Tex.Civ. App., Tyler, 1967, ref., n. r. e.). Assuming, arguendo, that a fiduciary relationship did exist in this case, there is no evidence in the record that the alleged breach of said relationship by Appellee caused the damages sought by Appellant. On the contrary, the record shows that all money advanced by the Appellee was used to pay for the construction of Appellant's house. We are of the opinion that the contractor simply underbid the cost of the house and that said act of the contractor was the sole cause of Appellant's damage.

Considering the evidence in a light most favorable to Appellants, and indulging every reasonable intendment deducible from such evidence, we are of the opinion that the record before us does not reveal any fiduciary relationship which ripened into a constructive trust, nor that Appellee caused Appellant's damage. We hold that a directed verdict would have been proper. Appellant's First Point is overruled.

Appellant's Second Point reads as follows: "The trial court erred in refusing the special issues requested by Appellants." This point of error is insufficient to direct the attention of this court to any errors complained of in regard to Appellant's requested issues. *City of Nederland v. Callihan,* 299 S.W.2d 380 (Tex.Civ.App., Beaumont, 1957, ref., n. r. e.). The point is too general, and it attempts to lump together all special issues which Appellant may have wanted the court to submit without setting them out particularly and separately. *Enlow v. Brown,* 357 S.W.2d 608 (Tex.Civ. App., Dallas, 1962, n. w. h.). The point is multifarious and general in nature, and, therefore, does not require our consideration. *Nutter v. Dearing,* 400 S.W.2d 346 (Tex.Civ.App., Dallas, 1966, ref., n. r. e., 402 S.W.2d 889); *Green v. Maxwell,* 423 S.W.2d 384 (Tex.Civ.App., Houston, 1968, ref., n. r. e.); *Yarber v. Pennell,* 443 S.W.2d 382 (Tex. Civ.App., Dallas, 1969, ref., n. r. e.); *Ritter v. Kendrick,* 482 S.W.2d 369 (Tex.Civ.App., Austin, 1972, n. w. h.); *Terry v. Buttercup Oil Corp.,* 487 S.W.2d 169 (Tex.Civ.App., San Antonio, 1972, ref., n. r. e.); Rule 418 T.R.C.P.

Appellant's Second Point is overruled.

Judgment of the trial court is affirmed.