## Mark Henry Calhoun v. The State.

### No. 19648.   Delivered April 27, 1938.

The opinion states the case.

*L. P. DeLee,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

Morrow, Presiding Judge.—The offense is rape; penalty assessed at death.

Edeith Mae Jones, a girl thirteen years of age, testified that on the night of October 9, 1937, she attended a picture show at the Fair Theatre in Dallas, Texas, in company with a girl friend. After the show the prosecutrix looked for her brother who was to escort them home, but failing to find him, they decided to walk home alone. The girl friend accompanied the prosecutrix to Fourth Avenue, from which point the prosecutrix had to walk three blocks to her home which was one block past the Wheatley School. When the prosecutrix reached the school mentioned, the appellant stopped her and asked her where a certain street was. She replied that she did not know. He then grabbed her and said: "Don't scream, or I will kill you." There was a street light nearby which enabled the prosecutrix to see the appellant very plainly. He grabbed the prosecutrix by her throat, caught her hand and dragged her to the Wheatley School. She was fighting him all the time. During the struggle he cut her on three fingers with a razor. When the appellant was dragging the prosecutrix to the school building he said to her: "Hell, I am going to f— you." She asked him why he did not pick on some one of his own race, to which he replied, "I am going to f— you." According to the prosecutrix, the appellant told her that she was not the first one that he had gotten hold of but that she was the toughest. After carrying the prosecutrix

into the school building, the appellant placed her on a bed in the clinic. She fought him until she fell on the floor, where the assault took place. While they were struggling on the bed, the appellant said that he had a pistol under the pillow, and that if she did not keep quiet he would blow her brains out. She put her hand under the pillow and felt something there, but appellant jerked her hand away and did not permit her to get hold of whatever it was. During the struggle before the assault the appellant tore off the garments of the prosecutrix from her waist down. After the assault the prosecutrix ran home and reported the matter to her mother.

Mrs. L. G. Jones, mother of the prosecutrix, testified that she took her daughter to a picture show on the night of October 9, 1937. The brother of the prosecutrix was to escort her home, but he did not do so and she had to come home alone for two or three blocks. When the prosecutrix reached home about twelve o'clock on the night in question, she had on a slip which was draped on her arm to conceal her nakedness. The left hand of the prosecutrix was cut. Her face, body and legs were just a mass of blood. She had bruises between her legs and on her throat. The prosecutrix told her mother that she had been attacked and raped by a negro in the school. She said that the negro had forced her on the floor and had penetrated her body with his male organ.

Jack Archer, a city detective of Dallas, testified that he searched the neighborhood where the assault occurred, and that he later arrested the appellant in Frederick, Oklahoma, which was about 200 miles from the city of Dallas; that after the arrest, the appellant talked to the officer about the offense.

The written confession of the appellant, duly executed and voluntarily made, was introduced in evidence upon the trial. From it we quote as follows:

"I left Dallas to go to Oklahoma to pull cotton last Tuesday a week ago. On the Saturday night before I left I had been up by the Back Yard Cafe and had come back down the street and was sitting on the corner when I saw a girl coming. She was almost to me when I saw her. I got up and grabbed her and started pulling her toward the school building. I already had a knife in my hand made out of a razor blade fastened in a straight thing like they scrape windows with and the handle wrapped with tape. While we were tussling toward the school house the girl grabbed the knife in my hand. She was tussling and screaming so that I do not know whether she was cut or not. I pulled the girl in the Wheatley School and put her on one of the clinic beds. I couldn't keep the girl on the bed, she

scuffled so, and I had to hold her on the floor to rape her. When I got through using her I let her up and went to the door to see if anyone was coming and when I came back the girl was gone. I don't know who the girl was. That is the only time I ever saw her. The night this happened I was wearing a dark suit of clothes but the coat and pants didn't match. I had on the same blue shirt I am wearing now. The suit is out at my house. The girl screamed and fought so that I don't know much she said but I remember she asked me five or six times while we were on the floor if I would let her go home when I got through. After I left the school I went to Second and Metropolitan and went to the side of Mr. Bob's Filling Station and washed the blood off of my hands and went home."

The appellant introduced Dr. T. E. Kelly, superintendent of the City Emergency Hospital, who testified that he examined the prosecutrix at about 2:00 o'clock on the morning of October 10, 1937; that she had a bloody bandage on the three middle fingers of her left hand. She had several bruises on both sides of her throat, which appeared to have been made by hands or fingers. She also had some bruises on both thighs and on the inside of her legs. The doctor examined the privates of the prosecutrix and found that the mucus membrane on the hymen was red, swollen and apparently bruised. The hymen was not broken, but the doctor testified that an attempt to enter the vagina with some blunt instrument such as the male organ of a person caused the condition mentioned.

Appellant also introduced as a witness Dr. H. H. Whitten, who expressed the opinion that where the legs of a thirteen-year-old girl have been pushed apart by the insertion of two legs of an eighteen-year-old male, it would not be possible for him to insert his male organ into her female organ without breaking some of the membranes of the hymen. However, on cross-examination, the doctor testified that it would be possible for the male organ to enter into a female organ an inch past the larger lips and then to distend to some extent the hymen itself without breaking it.

The State introduced in rebuttal Dr. Horace E. Duncan, Dallas County Health Officer, from whose testimony we quote as follows:

"Instances have been known where the hymen is not so elastic that it might not accommodate the complete act of intercourse without the rupture of the hymen itself. This has happened in numerous cases where the membrane is thin and elastic and this was done without the rupture of this so-called hymen. In

other words, in some instances this membrane is so flexible or so elastic that complete act of intercourse can be had without it wholly rupturing the hymen. * * * History of medicine records quite a few cases of intercourse without rupture of the hymen."

The State introduced upon the trial the skirt worn by the prosecutrix on the night of the alleged assault; also the pillow slip and sheet which were on the bed in the school building. Photographs were introduced showing blood stains on the door of the Wheatley School Building and the bed in question.

No bills of exception appear in the record, but from our examination of the evidence, we infer that some issue must have been made as to the question of penetration. On that subject, we quote from 35 Tex. Jur., page 790, Section 5, as follows:

"The first element essential to the crime of rape is 'carnal knowledge,' a term that ordinarily signifies sexual intercourse or a completed act of coition. But 'penetration only' need be proved as a basis for conviction, and it has been said that in limiting the 'carnal knowledge' to 'penetration only,' the Legislature intended to eliminate the question of 'emission' in such cases. Be this as it may, there can be no carnal knowledge without penetration, and this means that the sexual organ of the male entered the sexual organ of the female.

"While, as we have said, sexual penetration is an essential element of the crime of rape, the law does not require the penetration to be of any particular depth; any penetration, however slight, is sufficient to complete the offense. It need not go to the extent of rupturing the hymen; a mere entry between the labia or lips of the female private parts is sufficient."

As to the penetration, the prosecutrix testified as follows:

"This negro, then, placed his male organ in my female organ at that time; * * * this was while I was on the floor the last time, when he placed his male organ in my female organ."

In view of the severe penalty assessed, we have discussed the evidence at length. In our opinion, it is sufficient to support the verdict of the jury. The rights of the appellant were fully protected by the charge of the court, against which no objections are addressed.

Perceiving no error justifying a reversal of the conviction, the judgment is affirmed.