**Doc RHYNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44859.**

Court of Criminal Appeals of Texas.

April 26, 1972.

Charles H. Winston, Odessa, for appellant.

John Green, Dist. Atty., and J. A. (Jim) Bobo, Asst. Dist. Atty., Odessa, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of rape. Punishment was assessed by a jury at twenty years.

Initially, appellant contends that since a doctor testified that there was "no evidence of rape or intercourse" the uncorroborated testimony of the complaining witness is insufficient to support the conviction.

The record reflects that the fifty-seven year old prosecutrix was a Bible sales lady and that on May 15, 1969, at approximately 5 o' clock P.M. she was going from door to door at an apartment house in Odessa when she encountered the appellant. He asked her what she was doing, to which she replied that she was "selling the World's most beautiful family blue ribbon Bible." The appellant invited her inside his apartment and she entered to "try to sell him a Bible." He motioned to her to sit on the bed in his bachelor apartment, and she complied. Appellant seated himself just opposite. She opened the Bible and began to tell him "the main features and the advantages of it." He informed her that he would buy a Bible for his mother, whereupon she proceeded to write out a contract. He then seated himself beside the prosecutrix and told her that if she would go to bed with him he would buy three Bibles. At this time the prosecutrix put the Bible back in her case, picked up the order pad, got up, and started to the door. Appellant blocked her exit, telling her that he would give her a bottle of whisky. She informed him that she was not interested in that and proceeded to attempt an exit. She testified that appellant "grabbed me by the shoulders and he said you're not going anywhere." At this moment, the prosecutrix screamed, and the appellant struck her and threw her back against the bathroom wall. She came away from the bathroom wall screaming for help. He grabbed her by the throat, threw her on the bed, and "jumped on top of me, I went down kicking as hard as I could." During the struggle, the appellant had his hand at the throat of the prosecutrix; and as he held her pinned down, he "ripped" off her underclothing and proceeded to get on top of her. The prosecutrix was resisting and was holding her legs together as tight as she could. She was informed by the appellant that he would break her legs if she did not get them apart. The prosecutrix testified: "I thought finally I will try to appeal to his better knowledge. I said 'Here you have ordered a Bible for your mother,' I said 'I am old enough to be your mother, would you want someone to treat your mother like this?' " She stated that he penetrated her private parts but he did not have "a full erection" due, apparently, to his heavy drinking.

The prosecutrix further testified that at one time during the struggle she thought she heard someone coming past the window, and she screamed. At this time the appellant, while holding his hand on her throat, told her that if she "let out a peep" he would smother her with the pillow. She said she told him that her husband "is liable to come to the door any minute, because we always meet eventually on a block." And he said, "I have got a revolver there in the bedside stand, if he comes to the door I will kill him."

The appellant discontinued the act of intercourse prior to reaching a climax. When he released the prosecutrix, she got up and started out the front door. He intercepted her and told her she would have to depart from the back door. She left the apartment and went immediately to the car where she met her husband and reported the incident to him. They went forthwith to the police station and told the police what had happened. The prosecutrix was then taken to the doctor.

Doctor Rowntree testified that his examination revealed no abrasions and contusions and stated that there was "no evidence of rape or intercourse." However, he testified that he could not tell the jury that the prosecutrix had not been raped because she could have had intercourse and her private parts could have been violated without any evidence of bruises and contusions being apparent.

Appellant specifically contends that the evidence is insufficient to prove penetration.

This court, in Johnson v. State, 449 S.W. 2d 65, at page 68, stated:

"Although penetration must be proved beyond a reasonable doubt it does not have to be of any particular depth. Any penetration, no matter how slight, is sufficient to satisfy the requirements of Article 1187, Vernon's Ann.P.C. See Calhoun v. State, 134 Tex.Cr.R. 423, 115 S.W.2d 965; Lynch v. State, 150 Tex.Cr.R. 57, 199 S.W.2d 780. 'Penetration between the labia of the female's private parts by the male organ of the defendant is sufficient although the vagina was not entered or an act of intercourse was never completed.' 4 Branch's Ann.P.C. 2nd ed., Sec. 1977, p. 301." Cf. Nilsson v. State, Tex.Cr.App., 477 S.W.2d 592 (1972).

In the instant case the prosecutrix testified that penetration was accomplished. We quote from her testimony as follows:

"Q. Then you say he did take your panties off and forced your legs apart?

"A. Yes, sir.

"Q. Did he have carnal knowledge, did he penetrate you any depth whatsoever, did he penetrate any part of your private part?

"A. Yes, sir, he did, but I would say the penetration was slight.

"Q. Did he continue to rub against your private parts?

"A. Oh, yes.

"Q. At any time do you recall or do you know whether he reached a climax or was any sperm discharged?

"A. No, sir, I am positive, I know he didn't reach a climax.

"Q. Was it due to his drinking or was he drunk, would you say?

"A. Yes.

"Q. Do you know whether he was fully erected or not?

"A. No, sir, I am sure because he was quite soft and I figured it was just too much liquor.

"Q. He did violate you and have carnal knowledge of your private parts?

"A. Definitely."

The court charged the jury that "before there can be rape, penetration of the sexual organ of the female alleged to have been ravished by the male organ of the party accused must be proved beyond a reasonable doubt." We conclude the evidence was sufficient to show penetration and, in light of the prompt outcry, was sufficient to support the verdict.

Next, the appellant complains of prosecutorial misconduct. He represents that the district attorney, by use of a "rap sheet", attempted to imply to the jury that the appellant had a long arrest record.

The record reflects that during the trial a motion for mistrial was made and the jury was removed from the jury box. The appellant testified on this motion that he observed the district attorney turning pages of his "rap sheet" while he was testifying before the jury. He stated that this was clearly visible to him and the jurors were in a closer position to where the district attorney was seated than he was as he was testifying.

The district attorney testified at this hearing on appellant's motion and stated that he "never exhibited or waived or showed to the jury in any way, any form, any manner, the rap sheet which the defendant has." The record does not support appellant's contention. There was no showing, on motion for new trial or otherwise, that any jurors observed a rap sheet or formed any opinion to support appellant's contention.

Appellant contends that the state again attempted to imply that appellant had an arrest record during closing argument

on punishment. Complaint is made of the following argument:

"You see, we get to open up the book now, before we couldn't go into this, we couldn't put on character witnesses in the first stage of the trial, but the law allows this.

"Now, maybe you know why I probably got upset knowing what I know, because I couldn't tell you—

"MR. WINSTON: Your Honor, I want to make a Motion for Mistrial. The District Attorney is attempting to hint or suggest to the jury matters that are not in evidence and I would like, I say that you cannot cure it with an instruction to the jury, it is a flagrant attempt to bias the jury and I ask you to declare a Mistrial at this time.

"THE COURT: The Motion for Mistrial will be overruled, but the jury will be instructed that what the District Attorney thinks is not evidence.

"MR. WINSTON: What he knows that isn't brought out from the witness stand isn't evidence.

"THE COURT: What he knows is not evidence.

"MR. WINSTON: Or what he guesses or supposes.

"THE COURT: You only consider the evidence that is before you in this lawsuit and nothing else.

"MR. WINSTON: I would like to make an exception on the overruling of the Motion for Mistrial.

"THE COURT: All right, let's go.

"MR. GREEN: I would like to clear up this point to you, what I am referring to and probably the context in it, the character witnesses, I am referring to the first stage of the trial. We were not allowed to bring these character witnesses and that is what I am referring to, certainly I don't want you to be misinformed, I am not referring to anything else, I want you to just take the character witnesses, that is what I am talking about. I do not want to mislead you in any way whatsoever, but I did know in the second stage we could bring character witnesses and that is what I am referring to.

"I believe there is some misunderstanding, please understand what I am talking about, there is not any other thing that I know personally. I certainly don't want to mislead you, but what I have been telling you is that these character witnesses, I knew we could bring those in the second stage of the trial and you could see how the people of this community know this man and what people know him and what his reputation as a peaceful and law-abiding citizen of this community is."

In light of the court's instruction and the clarifying remarks of the prosecutor, the trial court's ruling on appellant's motion for mistrial was not error. e. g. Ward v. State, Tex.Cr.App., 474 S.W.2d 471.

Finally, appellant complains that the trial court committed reversible error by permitting the jury to separate after the charge of the court had been read and argument concluded at the guilt-innocence stage of the trial.

The record on appellant's motion for a new trial discloses that this matter was presented to the trial court and that the appellant agreed to such separation at a bench conference with the court. Whereupon, counsel for appellant stated "I want to make it perfectly clear, I am not saying I didn't agree to it . . ." Apparently, counsel contends that the record does not show that he fully explained such to appellant. We agree that the record should show that appellant personally consented to the jury separation at that stage of the trial. Article 35.23, Vernon's Ann.C.C.P. However, under the state of the record be-

**74**

fore us, we cannot say that appellant did not agree thereto.

There being no reversible error, the judgment is affirmed.