Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MOISES CASTILLO LOPEZ,                         )                  No. 08-05-00036-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  195th District Court
)
THE STATE OF TEXAS,                                   )                  of Dallas County, Texas
)
                                    Appellee.                          )                  (TC# F-0351450-WV)

O P I N I O N

            Moises Castillo Lopez appeals his conviction of aggravated sexual assault of a child. A jury
found Appellant guilty and assessed his punishment at a fine of $5,000 and imprisonment for a term
of seven years. We affirm.
FACTUAL SUMMARY
            Eight-year-old K.L. lived with her parents, two brothers, and Appellant, her uncle. K.L.’s
father was in El Salvador as part of a Christian ministry. On May 11, 2003, a Sunday afternoon,
K.L. and her younger brother were taking a nap. K.L.’s mother, Sandra, went to a nearby church to
purchase sodas. She estimated that she was gone fifteen to twenty minutes. When she returned, she
saw Appellant’s car in the driveway. She went in the house and found her younger son playing
alone. He indicated that K.L. was in Sandra’s bedroom. When Sandra saw that her bedroom door
was closed, she pushed it open and saw K.L. on her back on the edge of the bed with Appellant
kneeling between her legs. K.L. was crying and had covered her face. Appellant’s pants were down
around the middle of his buttocks and Sandra saw his penis. Sandra pulled Appellant away from her
daughter by grabbing the back of his underwear. Appellant immediately said “it’s not what you’re
thinkin,” but Sandra hit him and they began to argue. They went into the living room and Sandra
tried to call the police. Appellant took the telephone away from her and threw it down but Sandra
was able to complete the call.
            K.L. testified about the assault. She was asleep when Appellant woke her up. He laid her
on her mother’s bed with her feet hanging off of the edge. Appellant pulled down her underwear and
began touching her “private part” with his “private part.” Through the use of drawings of a girl and
boy, K.L. indicated that by private part she meant the girl’s female sexual organ and the boy’s penis. 
Appellant held both of her hands and tried to put his private part, which felt hard, into her private
part, but it hurt. Appellant stopped when her mother opened the bedroom door. Appellant became
angry and pushed the phone out of her mother’s hands as she tried to call the police. 
            Officer Melissa Person and Officer Griffith arrived at the house and found Sandra hysterical. 
Person described both Sandra and K.L. as extremely upset. Appellant was gone but a church
member returned him to the house. The scene became more chaotic when Appellant arrived. Person
observed Appellant to look a little nervous in the eyes. In order to calm the situation, the officers
decided to separate Appellant from K.L. and Sandra. Person remained in the house with Appellant
while Griffith took K.L. and Sandra onto the porch to speak with them. Person handcuffed
Appellant because she feared that he would flee. He was not under arrest but he was not free to go
during this portion of the investigation. Appellant, who was seated on the couch, made the following
statements to Person: “I did do it. I did it for her own good. I did it so she will know. I did it so
she will believe me. I did it so she will know I love her.” Appellant repeated these statements over
and over again. When Griffith returned, she told Person that a sexual assault had occurred and the
mother had witnessed it. Person advised Appellant that he was under arrest for the sexual of assault
of K.L. and she placed him in the patrol car. 
            K.L. was taken to a hospital that same day where she underwent a medical examination. Dr.
Marvin Culbertson, III found bruising on the inside of the child’s labia but he did not observe
bruising of the vagina or tearing of the hymen. His findings were consistent with the history
provided by K.L. and it was unlikely that the injuries had been caused by some type of accident, such
as falling down, since there were no injuries to the outer genitalia. The injuries indicated that some
object had penetrated the labia. 
            Allison Medina, a forensic interviewer at the Children’s Advocacy Center, subsequently
interviewed K.L. and did not find any signs that she had been coached. 
            After receiving his Miranda


 warnings, Appellant provided a written statement to police
detectives: “I just checked her to see if [K.L.] was or had been with her brother.” At trial, Appellant
testified and denied sexually assaulting his niece. The jury found him guilty of intentionally and
knowingly penetrating K.L.’s female sexual organ with his penis.
WRITTEN STATEMENT
            In Point of Error One, Appellant challenges the admission of his written statement because
he did not intelligently, knowingly, or voluntarily waive his rights.


 Appellant argues that he did not
understand his rights or the nature of the proceedings because he is primarily a Spanish speaker and
is uneducated. He also contends that he was afraid of the police officers. 
            We review a trial court’s ruling on a motion to suppress using the bifurcated standard
articulated in Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v. State, 10
S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El Paso
2002, pet. ref’d). We do not engage in our own factual review because at a suppression hearing, the
trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be
given to their testimony. See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); Romero v.
State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We give almost total deference to the trial
court’s ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor. Johnson v. State, 68 S.W.3d 644, 652-53
(Tex.Crim.App. 2002); Best v. State, 118 S.W.3d 857, 861-62 (Tex.App.--Fort Worth 2003, no pet.).
We review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on
the credibility and demeanor of witnesses. Johnson, 68 S.W.3d at 652-53. Because the trial court’s
ruling on the admissibility of Appellant’s written statement turns on an evaluation of credibility and
demeanor, we are not at liberty to disturb any finding which is supported by the record. See
Dewberry v. State, 4 S.W.3d 735, 747-48 (Tex.Crim.App. 1999).
            To be admissible, a statement must be in writing, or electronically recorded, and show on its
face that the accused was made aware of his rights. See Tex.Code Crim.Proc.Ann. art. 38.22, §
2 (Vernon 2005); Tex.Code Crim.Proc.Ann. art. 38.22, § 3; Garcia v. State, 919 S.W.2d 370, 378
(Tex.Crim.App. 1994). Detectives Arlene Martinez and Alberto Chavez interviewed Appellant on
May 13, 2003. Appellant told the detectives that he spoke and wrote both English and Spanish but
he preferred Spanish. Chavez read the warnings aloud to Appellant in Spanish. Appellant read
along, and placed his initials next to each individual warning on the card indicating that he
understood each right. Appellant also placed his signature on the card and told the detectives that
he understood his rights. Detective Martinez conducted the interview in English with Detective
Chavez serving as the translator. Martinez recalled that Appellant often answered in English even
before Chavez had translated. Appellant told Chavez that he knew he had violated K.L. He had
confronted the child as to whether she was having sex with her brother. When K.L. admitted it, he
told her that he needed to check her. Appellant placed her on the bed, pulled her underwear to the
side, and opened her vagina with his hands in order to look at it. It was at this point that Sandra
walked into the bedroom. Appellant did not reduce these oral statements to writing. The written
statement form is in Spanish and contains the warnings required by Article 38.22. Appellant told
the detectives that he understood his rights and he placed his initials beneath each paragraph on the
form to so indicate. In his own handwriting, Appellant wrote, “I just check her to see if [K.L.] was
or had been with her brother, I solo le aparte su panty toque con mis dedos.” Detective Chavez
translated the Spanish portion of the statement as “I only moved her panties and touched with my
fingers.” The detectives did not raise their voices or threaten Appellant during the interview. 
            Appellant testified at the suppression hearing that he did not graduate from high school. He
could read and speak English but he preferred Spanish. He admitted signing the warning card and
initialing the written statement form, but insisted he did not understand them. He claimed that he
signed the documents because both detectives questioned him in loud voices and he was afraid they
would hit him. His written statement was not true and he gave the statement only because he was
mad. 
            Because the record supports the trial court’s conclusion that Appellant understood his rights,
voluntarily waived them, and voluntarily gave the written statement, we conclude that the court did
not abuse its discretion by denying Appellant’s motion to suppress. See Dewberry, 4 S.W.3d at 747-48. Point of Error One is overruled.
LEGAL AND FACTUAL SUFFICIENCY
            In Points of Error Two and Three, Appellant contends that the evidence is legally and
factually insufficient to support his conviction because K.L.’s testimony conflicted with her
mother’s, and the State failed to present any physical, medical, or scientific evidence that he
penetrated the complainant’s female sexual organ with his penis.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). We do not resolve any
conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do
so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies
in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the
standard of review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d
at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In Zuniga v.
State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), the Court of Criminal Appeals clarified the
factual sufficiency standard and linked the appellate standard of review to the beyond a reasonable
doubt burden of proof. There is only one question to be answered in a factual sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt
beyond a reasonable doubt? Zuniga, 144 S.W.3d at 484. However, there are two ways in which the
evidence may be insufficient. Id. First, when considered by itself, evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt. Id. Second, there may
be both evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. 
Id. at 485. This standard acknowledges that evidence of guilt can “preponderate” in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Id. Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard. Id. In performing this review,
we are to give due deference to the jury verdict, as well as to determinations involving the credibility
and demeanor of witnesses. Zuniga, 144 S.W.3d at 481.
Penetration
            A person commits the offense of aggravated sexual assault of a child if he intentionally or
knowingly causes the penetration of the female sexual organ by any means, and the victim is younger
than fourteen years of age. See Tex.Penal Code Ann. § 22.021(a)(1)(B), (a)(2)(B)(Vernon Supp.
2005). The Penal Code does not define the term penetration. Case law, however, has established
that the slightest penetration of the female sexual organ is sufficient to prove penetration even though
the vagina is not entered. See Vernon v. State, 841 S.W.2d 407, 409 (Tex.Crim.App. 1992); Sherbert
v. State, 531 S.W.2d 636, 637 (Tex.Crim.App. 1976); Nilsson v. State, 477 S.W.2d 592, 595
(Tex.Crim.App. 1972). Penetration occurs where the contact is more intrusive than contact with the
outer labia. See Vernon, 841 S.W.2d at 409. Pushing aside and reaching beneath a natural fold of
skin into an area of the body not usually exposed to view, even in nakedness, is a significant
intrusion beyond mere external contact, and is sufficient to prove penetration. Id.
            This case is factually similar to Vernon v. State. There, the complainant testified that her
stepfather put his finger in her “vaginal area,” but she was unable to describe the contact any more
specifically other than to say that he “started pressing and it hurt.” See Vernon, 841 S.W.2d at 409. 
Medical testimony established the complainant had an injury under the fold of her labia majora but
outside the vaginal canal. Id. at 409. The Court of Criminal Appeals concluded that penetration had
occurred because the evidence established more intrusive contact than contact with the outer labia. 
Id.
            Here, K.L. testified that Appellant touched her “private part” with his “private part” and she
described how it hurt when he tried to put his private part in her. Contrary to Appellant’s argument
that there is no medical evidence of penetration, Dr. Culbertson found bruising on the inner labia
outside of the vaginal vault. This bruising indicated that some object had penetrated the inner labia
and Dr. Culbertson’s findings were consistent with K.L.’s account of the offense. While the
evidence did not show penetration of the vagina, it is legally sufficient to establish penetration of the
female sexual organ. See Vernon, 841 S.W.2d at 409 (evidence showing that defendant pushed aside
and reached beneath natural fold of skin and made contact with an area near the vaginal entrance was
sufficient to prove penetration of female sexual organ); Sherbert, 531 S.W.2d at 637 (penetration
proven where complainant testified that defendant pushed his penis against and into her female
sexual organ, and medical evidence showed abrasion just outside of the vaginal opening); Rhynes
v. State, 479 S.W.2d 70, 72 (Tex.Crim.App. 1972)(evidence showing only “slight” penetration of
complainant’s female sexual organ due to defendant’s lack of erection was sufficient to establish
penetration); Murphy v. State, 4 S.W.3d 926, 929 (Tex.App.--Waco 1999, pet. ref’d)(penetration
proven where child victim’s testimony showed that defendant placed his fingers between the child’s
labia and rubbed on the vaginal opening). 
            Regarding factual sufficiency, Appellant argues that K.L. and her mother were not credible
witnesses. We must keep in mind, however, that it was the jury’s task to resolve conflicts in the
evidence, determine credibility, and assign weight to the evidence. Deference must be accorded to
the jury’s determinations involving the credibility and demeanor of witnesses. See Zuniga, 144
S.W.3d at 481. Appellant challenges Sandra’s testimony because she admitted that she could not
remember everything clearly as it happened so fast. While Sandra did not remember every detail,
she did see Appellant kneeling between K.L.’s legs with his pants loose and his penis exposed. K.L.
was on the bed crying with her face covered. Similarly, Appellant attacks K.L.’s credibility because
she could not remember certain details about the incident and her testimony was sometimes
contradictory. While the child could not remember every detail and some of her testimony seemed
contradictory, she consistently testified that Appellant attempted to put his private part in her private
part and that it hurt. Contrary to Appellant’s assertions regarding the absence of medical evidence,
Dr. Culbertson found bruising of the inner labia consistent with K.L.’s testimony about the assault. 
Penetration of the inner labia is sufficient to support a conviction of aggravated sexual assault even
though there is no penetration of the vagina. We conclude that the evidence is factually sufficient
to support Appellant’s conviction of aggravated sexual assault. Points of Error Two and Three are
overruled. The judgment of the trial court is affirmed.

March 23, 2006                                                           
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)