

## NUMBER 13-06-00587-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**CAREY LEE CRAMER,**                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

### On appeal from the 370th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellant, Carey Lee Cramer was convicted of indecency with a child by contact, indecency with a child by exposure, and aggravated sexual assault of a child regarding E.B. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (2) (Vernon 2003), § 22.021(a)(2) (Vernon Supp. 2008). He was also convicted of indecency with a child by contact regarding S.M.

*See id.* § 21.11(a)(2).  Cramer challenges the trial court's judgment by the following ten issues:  (1) the evidence was legally insufficient to support his conviction for aggravated sexual assault; (2) the evidence was factually insufficient to support his conviction for aggravated sexual assault; (3) the trial court erred by denying his motion for instructed verdict; (4) the trial court erred by finding the outcry statement made by E.B. to S.W. to be reliable; (5) the trial court erred by finding the outcry statement made by S.M. to M.M. to be reliable; (6) the trial court erred by limiting his cross-examination of S.W. during the outcry reliability hearing; (7) the trial court erred in  denying his request to conduct a voir dire examination of Lynn Tyson, an expert witness for the State; (8) the trial court erred by denying him a 705(b) hearing under the Texas Rules of Evidence to investigate the underlying facts or data upon which Tyson based her opinions; (9) the trial court erred by limiting his cross-examination of Tyson; and (10) the trial court erred by denying his motion for mistrial.  We affirm.

## I. BACKGROUND

In 2004, S.W. called the Tucson, Arizona Police Department and reported that Cramer had sexually abused her eleven-year-old daughter, E.B.  After interviewing E.B., Detective Johnny Walker of the Tucson Police Department informed the McAllen Police Department that Cramer may have sexually abused E.B. in Hidalgo County, Texas.

Cramer was subsequently arrested for sexually abusing E.B. and S.M., S.W.'s little sister, and charged with the following offenses:  (1) aggravated sexual assault of a child, E.B., (counts one, four, five, six, seven, and eight); (2) indecency with a child by sexual contact of S.M. (count two); (3) indecency with a child by sexual contact of E.B. (count three); and (4) indecency with a child, E.B., by exposure (count nine).  A jury found Cramer

2

guilty of counts two, four, and nine.  The trial court placed Cramer on ten years' community supervision for counts two, three, and nine, to run concurrently with a sentence of six years' imprisonment for count four.  This appeal ensued.

## II. Sufficiency of the Evidence

By his first and second issues, Cramer contends that the evidence was legally and factually insufficient to support a conviction of aggravated sexual assault of a child because the evidence failed to establish beyond a reasonable doubt that Cramer caused his sexual organ to penetrate E.B.'s sexual organ.  By his third issue, Cramer contends that the trial court erred by denying his motion for instructed verdict.  We address Cramer's first and third issues together because a challenge to the trial court's ruling on a motion for instructed verdict is a challenge to the legal sufficiency of the evidence.  *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (en banc); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex. App.–Corpus Christi 1997, pet. ref'd) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993); *Rodriguez v. State*, 888 S.W.2d 211, 214 (Tex. App.–Corpus Christi 1994, no pet.)).

### A.  Standard of Review and Applicable Law

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004).  We do not re-evaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.  *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)

(en banc); *Beckham v. State,* 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham,* 29 S.W.3d at 151.

In a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or the jury's verdict is against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This Court will not reverse the jury's verdict unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Id.* at 417.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State,* 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, a person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes his sexual organ to penetrate the sexual organ of a child younger than fourteen years of age. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B) (Vernon Supp. 2008).

The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. Tex. Code Crim. Proc. art. 38.07 (Vernon 2005); *see Garcia v. State,* 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). The victim's description of what occurred does not need to be precise, and wide latitude is given to the testimony of a child victim of sexual abuse. *Villalon v. State,* 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). Penetration may be proved by circumstantial evidence, and there is no requirement that the child victim be able to testify as to penetration. *Id.* at 133. Moreover, the slightest

4

penetration is sufficient to uphold a conviction if it is proven beyond a reasonable doubt. *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976); *Rhynes v. State*, 479 S.W.2d 70, 72 (Tex. Crim. App. 1972).

## B. Analysis

Cramer complains that E.B.'s testimony that he did not penetrate her vagina with his penis in Hidalgo County is contrary to the verdict. However, "[p]enetration between the labia of the female's private parts by the male sexual organ of the defendant is sufficient although the vagina was not entered or an act of intercourse was never completed." *Sherbert*, 531 S.W.2d at 637; *see Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (en banc) (providing that contact with the female sexual organ in a manner a reasonable person would consider more intrusive than contact with the outer vaginal lips constitutes penetration). Because wide latitude is given to the testimony of a child victim of sexual abuse, *see Villalon*, 791 S.W.2d at 134, the jurors could have inferred that Cramer penetrated E.B.'s labia with his penis in Hidalgo County based on her testimony that in McAllen, Texas, Cramer put "jellyish stuff" on her vagina, "inserted" or "rubbed" his penis on her sexual organ until he ejaculated, and told her, "It's almost in[,]" even though E.B.'s vagina was not entered or an act of intercourse was never completed. *See Sherbert*, 531 S.W.2d at 637; *Vernon*, 841 S.W.2d at 409 ("[P]ushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact."); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.–Dallas 1994, no pet.) ("Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute.").

5

Viewing the evidence in the light most favorable to the verdict we conclude that a rational trier of fact could have found beyond a reasonable doubt, *see Hooper*, 214 S.W.3d at 13; *Escamilla*, 143 S.W.3d at 817, that Cramer caused his sexual organ to penetrate E.B.'s sexual organ in Hidalgo County. *See Sherbert*, 531 S.W.2d at 637; *Rhynes*, 479 S.W.2d at 72; *see also Everage v. State*, 848 S.W.2d 357, 358 (Tex. App.–Austin 1993, no pet.) (per curiam) ("'Female sexual organ' is a more general term that refers to the entire female genitalia, including both the vagina and the vulva."). Furthermore, viewing the evidence in a neutral light, we conclude that the evidence is not so weak that the jury's verdict seems clearly wrong and manifestly unjust and that the jury's verdict is not against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-15. We overrule Cramer's first, second, and third issues.

### III. OUTCRY TESTIMONY

In his fourth and fifth issues, Cramer contends that the trial court abused its discretion by admitting the outcry testimony of S.W. and M.M. S.W. testified as a witness regarding E.B.'s outcry statement, while M.M. testified as a witness regarding S.M.'s outcry statement.[1]

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2007). We should uphold the trial court's judgment unless the trial court's decision lies outside the "zone of reasonable disagreement." *Id.*

---

[1] In his brief, Cramer asserts that M.M. also testified as an outcry witness regarding E.B.'s statement. However, based on our review of the record, the trial court only admitted M.M. as an outcry witness regarding S.M.'s statement. Therefore, Cramer's complaint is without merit.

6

Article 38.072 of the Texas Code of Criminal Procedure provides a hearsay exception permitting the State to introduce statements made by a child against whom an offense was allegedly committed and describes the proper outcry witness as "the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(a)(2) (Vernon 2005). In order to be admissible, the child's statement to the outcry witness must describe the alleged offense in some discernible manner and "must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (en banc).

Before admitting the outcry testimony pursuant to article 38.072, the trial court must conduct a hearing outside the presence of the jury to determine if the statement is reliable "based on the time, content and circumstances of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(2). The determination of the admissibility of an outcry statement is left to the broad discretion of the trial court, and the trial court's findings will be upheld so long as they are supported by the record. *Castelan v. State*, 54 S.W.3d 469, 475 (Tex. App.–Corpus Christi 2001, no pet.) (citing *Garcia*, 792 S.W.2d at 92).

Cramer argues that E.B.'s statements to S.W. "did not relay any specific details about the charged offense," therefore, the trial court should have determined that the statements were nothing more than general allusions that something sexual was occurring and not a clear description of the offense charged. It is undisputed that S.W. was the first person, 18 years of age or older, that E.B. told about the offense. Outside the presence of the jury, S.W. testified that after watching a television show about sexual abuse, she asked her daughter E.B., who was eleven at the time, whether Cramer "had ever done

7

anything sexual or inappropriate to her." According to S.W., E.B. answered "Yes," and stated that Cramer started showing her "pictures of men and women together and then women and women doing sexual acts together on the computer." S.W. also testified that E.B. told her that Cramer made her perform oral sex on him, that he performed oral sex on her, and that Cramer put his fingers inside of her. S.W. explained that E.B. did not use the terms oral sex, but that E.B. said that she "sucked on him" and that he "licked her." According to S.W., E.B. claimed that these things happened when they lived in Mercedes and when they lived in McAllen. E.B. also told S.W. that Cramer went into her bedroom after she had showered, pushed her onto the bed, tried to put his penis inside of her, and stopped when she started crying.

Based on S.W.'s testimony, the trial court could have concluded that E.B. described the alleged offenses in a discernable manner. Therefore, due to the broad discretion afforded trial courts in the determination of who is a proper outcry witness, *Id.* at 475, we cannot say that the trial court's decision to admit S.W.'s outcry testimony under article 38.072 lies outside the "zone of reasonable disagreement." *Oprean*, 201 S.W.3d at 726. We overrule appellant's fourth issue.

We next consider the outcry testimony provided by M.M. M.M. testified that, after "[E.B.] had given me some information," she suspected that "something may have happened" to S.M. M.M. asked S.M. if anything had happened to her while she was with Cramer. S.M. told her that when she visited S.W. and E.B. in McAllen, Texas, a few months before the family moved to Arizona, Cramer had "played around" with her. S.M. also told M.M. that, after she and E.B. took a bath, Cramer asked her to wear "a little skirt" and that they were "going to play tickling." According to S.M., "one girl would hold the other

8

one down" while Cramer tickled her.  S.M. told M.M. that Cramer put his hand "underneath her panties" and touched her "private parts" while he was tickling her.  M.M. testified that S.M. was very nervous when she told M.M. about the alleged abuse and that S.M. stated she had been afraid to tell M.M. about the incident.

Cramer argues that the trial court abused its discretion by determining M.M.'s testimony was reliable, "given that the allegations were not reported for some time, over two years," and that when the allegations were finally reported, "[CPS] did not find the statements reliable enough to follow through."

In determining the reliability of a statement "based on the time, content and circumstances" in which it is made, as required by section 2(b)(2) of article 38.072 of the Texas Code of Criminal Procedure, the phrase "time, content, and circumstances" refers to "the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances surrounding the making of  that statement."  TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(2); *Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd).  The focus of the inquiry must remain upon the outcry statement.  *Broderick*, 89 S.W.3d at 699.

Focusing on S.M.'s outcry statement, the trial court could have concluded that it was reliable based on M.M.'s testimony.  Therefore, due to the broad discretion afforded trial courts in the determination of who is a proper outcry witness, *Castelan*, 54 S.W.3d at 475, we cannot say that the trial court's decision to admit M.M.'s outcry testimony under article 38.072 lies outside the "zone of reasonable disagreement."  *Oprean*, 201 S.W.3d at 726. We overrule appellant's fifth issue.

9

In his sixth issue, Cramer contends that the trial court deprived him of "his right to confront, cross examine, and adequately test the reliability of the outcry statement(s)" by limiting his cross-examination of S.W. during the "outcry reliability hearing." Cramer sought to question S.W. regarding her state of mind and her actions after E.B. made her outcry statement. However, S.W.'s actions after E.B.'s outcry were not relevant to the reliability of E.B.'s statement. Therefore, because Cramer's questions were outside the narrow scope of the inquiry into the time, circumstances, or content of the outcry statement, the trial court did not abuse its discretion by limiting Cramer's cross-examination of S.W. *See id.* (providing that the trial court's decision to limit cross-examination is not subject to reversal absent a showing of a clear abuse of discretion). We overrule Cramer's sixth issue.

## IV. EXPERT WITNESS TESTIMONY

By his seventh issue, Cramer contends that the trial court erred by denying his request to conduct a voir dire examination of Lynn Tyson, the State's expert witness.

Under Texas Rule of Evidence 705(b), before an expert witness gives an opinion or discloses the underlying facts or data upon which she relied, "a party against whom the opinion is offered upon request in a criminal case shall . . . be permitted [out of the hearing of the jury] to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based." TEX. R. EVID. 705(b). The purpose of such a voir dire examination is to explore the facts and data underlying the expert's opinions. *See id.*; *Jenkins v. State*, 912 S.W.2d 793, 814 (Tex. Crim. App. 1995) (op. on reh'g). Improper denial of a rule 705(b) hearing is subject to a harmless error analysis. *Goss v. State*, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992); *see Alba v. State*, 905 S.W.2d 581, 588 (Tex.

10

Crim. App. 1995) (en banc) (providing that even if the trial court had erred in denying a 705(b) hearing, such error was "clearly harmless").

Cramer requested a 705(b) hearing to determine the underlying facts or data upon which Lynn Tyson's opinion was based. The trial court denied his request and allowed Tyson to testify as an expert witness. Assuming without deciding that the trial court erred, we determine whether the error was "so harmful as to require a reversal." *See Goss*, 826 S.W.2d at 168.

Although Cramer argues that he was "forced" to discover the facts and underlying information that Tyson relied upon "in generating her conclusions and preparing her testimony," Cramer has not outlined what he could have learned from the voir dire examination of Tyson that was not already known. Cramer had been provided with a copy of Tyson's therapy session notes, which formed the basis of her opinion. In her notes, Tyson documented her treatment of E.B. Therefore, because Cramer was provided with a copy of the notes, we conclude the underlying facts and data that formed the basis of Tyson's opinion were made known to Cramer. *Jenkins*, 912 S.W.2d at 814 (finding that appellant knew the underlying facts or data because appellant had copies of the expert's evaluations of him that formed the basis of the expert's opinions); *Alba*, 905 S.W.2d at 588. Furthermore, Cramer does not refer this Court to any inadmissible evidence that was offered into evidence in the presence of the jury. *See Goss*, 826 S.W.2d at 168 (Rule 705(b) allows the opposing party the opportunity to explore the basis of the expert's opinions without fear of eliciting damaging hearsay or other inadmissible evidence in the presence of the jury); *see also McBride*, 862 S.W.2d at 609; *Vasquez v. State*, 819 S.W.2d 932, 935 (Tex. App.–Corpus Christi 1991, pet. ref'd) (Rule 705(b) allows the party not

11

calling the expert to explore the basis for the opinions without having the jury exposed to otherwise inadmissible data).

Moreover, although Cramer complains, without citing to the record, that Tyson's testimony was "replete with hearsay," similar evidence was introduced, without objection, earlier in the trial through E.B.'s testimony. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) ("An error if any in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.–Corpus Christi 2006, no pet.) ("A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.") (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). Therefore, we cannot say that the trial court's refusal to conduct a 705(b) hearing "was so harmful as to require a reversal." *See Goss*, 826 S.W.2d 162 at 168. We overrule Cramer's seventh issue.

By his eighth issue, Cramer complains that the trial court erred in denying his request for a mistrial on the basis that he was denied the opportunity to review the underlying facts and/or data upon which Tyson based her opinion. Specifically, Cramer complains that the trial court denied him access to materials Tyson allegedly relied upon in reaching her conclusions and preparing for her testimony. However, a review of the record shows that Cramer based his motion for mistrial on the right to confrontation under the Sixth Amendment and not on his inability to review the underlying facts and data upon which Tyson based her opinion. Because the basis of Cramer's complaint on appeal regarding the trial court's error in denying his request for mistrial does not comport with the basis raised in the trial court, Cramer has waived error. *See* Tex. R. App. P. 33.1(a)(1)(A);

12

*Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54-5 (Tex. Crim. App. 1996); *see also Reyna v. State*, 168 S.W.3d 173, (Tex. Crim. App. 2005) (providing that the issue is "whether the complaining party on appeal brought to the trial court's attention the very complaint that party" makes on appeal). We overrule Cramer's eighth issue.

## V. LIMITATION OF CROSS-EXAMINATION

By his ninth issue, Cramer contends that the trial court erred by limiting his cross-examination of Tyson regarding domestic violence. Specifically, Cramer argues that the trial court refused to allow him to cross-examine Tyson as to her motive and bias for testifying against him.

The right to cross-examination is the primary interest protected by the confrontation clause. *See* U.S. CONST. amend. VI; *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (en banc). In exercising that right, a defendant has broad latitude to pursue avenues of questioning "reasonably calculated to expose motive, bias, or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (en banc); *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987) (en banc). The ability to expose a witness's motivation to testify against a defendant is a "proper and important function of the constitutionally protected right of cross-examination." *Hurd*, 725 S.W.2d at 252 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Shelby*, 819 S.W.2d at 546. However, parameters of cross-examination remain within the sound discretion of the trial court, which must balance

13

probative value against prejudicial risks including undue prejudice, embarrassment, harassment, confusion of the issues, and undue delay. *Chambers v. State*, 866 S.W.2d 9, 26-27 (Tex. Crim. App. 1993) (en banc); *see Van Arsdall*, 475 U.S. at 679. The trial court's determination is only reversible if the appellant shows a clear abuse of discretion. *Chambers*, 866 S.W.2d at 27.

Prior to trial, the court granted the State's motion in limine, which requested that Cramer not inquire about acts of domestic violence during the course of the marriage of Cramer and S.W. However, during direct examination, Tyson testified about incidents of domestic violence. She stated:

> There were constant-there was a lot of domestic violence between the mother [S.W.] and the step-father [Cramer]. . . . And then there were some incidents where there was some violence between [Cramer] and [E.B.]. . . . [Cramer] slapped [S.W.] across the face. . . . [Cramer] closed the [car] window on [S.W.'s] arm and wouldn't let her out.

After this testimony, Cramer "requested leave to further inquire about what Tyson did to verify this information" and to "test whether Tyson knew about situations in which the opposite occurred." The trial court denied Cramer's request.

As the proponent of evidence of bias, Cramer was required to show that the evidence was relevant "by demonstrating that a nexus, or logical connection, exist[ed] between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004) (providing that a logical connection may exist when the witness is placed in a vulnerable position and may have a motive to testify in favor of the State). Here, Cramer does not reveal a potential motive for Tyson to have testified in favor of the State; Cramer does not assert that Tyson would have benefitted from her testimony; and, Cramer does not explain how his questions

14

would have demonstrated Tyson's potential motive. Therefore, Cramer has not demonstrated that a logical connection existed between Tyson's testimony that there was domestic violence in the family and any possible motive for Tyson to testify for the State. *See id.* We conclude that Cramer has not shown that the trial court clearly abused its discretion when it denied Cramer's request to cross-examine Tyson regarding domestic violence. We overrule Cramer's ninth issue.

## VI. EXTRANEOUS ACTS

By his tenth issue, Cramer contends that the trial court should have granted his motion for mistrial because the State failed to give him prior notice of its intent to introduce evidence of extraneous crimes and/or bad acts under Texas Rule of Evidence 404(b).

The State has a duty to provide "reasonable notice" of intent to introduce certain extraneous offenses upon the defendant's request. *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998). In order to request reasonable notice, the defendant may either file a discovery motion with the trial court or file a request of notice directly with the State. *Espinosa v. State*, 853 S.W.2d 36, 38-39 (Tex. Crim. App. 1993) (en banc) (per curiam). If the request is served directly on the State, it is self-executing, and no further action is required by the trial court. *Id.* at 38. However, if a defendant files a motion requesting court action, the State's duty to provide reasonable notice is not triggered until the trial court rules on the motion. *Mitchell*, 982 S.W.2d at 427; *Espinosa*, 853 S.W.2d at 38 (holding that "when a defendant relies on a motion for discovery to request notice pursuant to Rule 404(b), it is incumbent upon him to secure a ruling on his motion in order to trigger the notice requirements of that rule").

Here, the record shows that Cramer filed a pre-trial discovery motion with the trial court.  Having pursued his 404(b) notice through a motion addressed to the trial court, it was Cramer's burden to obtain a ruling on his motion.  *See Mitchell*, 982 S.W.2d at 427; *Espinosa*, 853 S.W.2d at 38.  Because Cramer did not secure a ruling, the State was not required to give notice.  *See Mitchell*, 982 S.W.2d at 427; *Espinosa*, 853 S.W.2d at 38.  We overrule Cramer's tenth issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 20th day of November, 2008.

16